UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
AUG 2 2 2017
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

NATIONAL FUEL GAS DISTRIBUTION
CORPORATION,

    Plaintiff,     **DECISION AND ORDER**

  v.           1:17-CV-00554 EAW

THE NEW YORK STATE ENERGY RESEARCH
AND DEVELOPMENT AUTHORITY, THE
UNITED STATES DEPARTMENT OF ENERGY,
RICK PERRY, as Secretary of the United States
Department of Energy, and CH2M HILL BWXT
WEST VALLEY, LLC,

    Defendants.

---

## **INTRODUCTION**

  This lawsuit centers around the provision of natural gas to the Western New York Nuclear Service Center at West Valley in Cattaraugus, New York—the former site of a commercial nuclear fuel reprocessing center (the first, and only site in the nation to commercially reprocess spent nuclear fuel). The approximately 3,300-acre site is owned by defendant New York State Energy Research and Development Authority ("NYSERDA"). The United States Department of Energy ("DOE") has been charged by Congress to, in essence, clean up and dispose of the radioactive waste at the site.[1] Those

---

[1]   Congress passed the West Valley Demonstration Project Act in 1980, directing the Secretary of the Department of Energy to carry out the clean up and disposal activities. *See* Pub. L. No. 96-368, § 2(a), 94 Stat. 1347 (1980).

- 1 -

efforts have been going on for decades. Currently, the DOE contracts with defendant CH2M Hill BWXT West Valley, LLC ("West Valley"), as the prime contractor for the DOE at the site.

Plaintiff National Fuel Gas Distribution Corporation ("NFG" or "Plaintiff"), a natural gas distributor which has been providing natural gas to the site for decades, has brought this lawsuit against NYSERDA, the DOE, the Secretary of Energy, Rick Perry, and West Valley (collectively, "Defendants"), seeking injunctive relief that, in essence, would allow NFG to cease supplying gas to the site and relieve NFG of any responsibility with respect to the site.

Initially Plaintiff filed its claims in New York State Supreme Court, Erie County, on May 5, 2017, at which time Plaintiff also sought preliminary injunctive relief. *See Nat'l Fuel Gas Distribution Co. v. The N.Y. Energy Research & Dev. Auth., et al.*, 1:17-cv-00447, Dkt. 1 (W.D.N.Y. May 22, 2017). On May 22, 2017, the DOE removed that state court litigation to this Court, *see id.*, and then filed a motion to dismiss on various jurisdictional grounds. *Id.* at Dkt. 6 (May 23, 2017). Ultimately, NFG agreed to voluntarily discontinue that lawsuit, *see id.* at Dkt. 31 (June 19, 2017), and it commenced the present litigation, asserting constitutional and state law claims. (Dkt. 1). NFG seeks a preliminary injunction allowing it to engage in a controlled shutdown of the natural gas service and cease gas service to the site, and allowing it to essentially abandon the pipeline and related facilities. (Dkt. 2).

Defendants not only oppose Plaintiff's motion for a preliminary injunction, but they have also moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 16; Dkt. 18; Dkt. 21). Alternatively, DOE and the Secretary of Energy move for summary judgment under Federal Rule of Civil Procedure 56. (Dkt. 16).

As expressed by the Court during the oral argument of this matter on August 3, 2017, there appears to be a legitimate basis for Plaintiff's concerns about the integrity of the pipeline infrastructure and the potential future dangers that it poses. In fact, all parties appear to agree that the pipeline should be replaced—but they cannot agree on who should pay for that cost. However, this Court is not the appropriate forum—at least at this time—for a resolution of the parties' disputes. As a result, for the reasons stated below, the motions to dismiss are granted.

## FACTUAL BACKGROUND

The factual allegations in the complaint are as follows: Plaintiff is a gas corporation which owns property in New York for the transmission and distribution of natural gas. (Dkt. 1 at ¶¶ 1-2). Plaintiff supplies gas through approximately 10,300 feet of pipe to the Western New York Nuclear Service Center at West Valley in Cattaraugus, New York ("the Property") (*See id.* at ¶ 24). The Property contains radioactive soil and groundwater from the processing of spent nuclear fuel on site between 1966 and 1972. (*Id.* at ¶¶ 15-16). Defendants are currently carrying out "a high-level radioactive waste

management demonstration project" on the Property, through DOE's contractor West Valley. (*See id.* at ¶¶ 20-21). West Valley is Plaintiff's customer. (*Id.* at ¶¶ 6-7).

In the 54 years since the installation of the pipeline, Plaintiff "has conducted regular leakage surveys and performed repairs and maintenance in the areas of the Property where it could." (*Id.* at ¶ 30). In June 2016, Plaintiff found a "Type I leak" in the pipeline on the Property in an area containing radioactive contamination. (*Id.* at ¶ 31). After Plaintiff refused to repair the pipe due to the radioactivity, "Defendants hired a qualified third-party contractor . . . to repair the Type I leak." (*Id.* at ¶¶ 33-34). The contractor installed a temporary fix. (*Id.* at ¶ 34). Plaintiff asserts that there are other leaks in the pipeline "that cannot be accessed for repair. . . ." (*Id.* at ¶ 35).

Plaintiff claims that as the pipeline ages, it could "fail" and "suffer a major breach" that would require an immediate shutdown of gas service. (*Id.* at ¶ 38). Such a shutdown "could" allow ground water to flow into the pipeline, "and the pipe could act as a conduit for the distribution of radioactive contaminants." (*Id.* at ¶ 39). Plaintiff also asserts "[u]pon information and belief" that a sudden shutdown could drain areas of the property that NYSERDA classifies as "wetlands," and could prevent Defendants from maintaining proper storage temperatures of the radioactive waste at the facility. (*Id.* at ¶¶ 40-41). Plaintiff seeks a "controlled and stable cessation of gas service. . . ," which requires Defendants' cooperation. (*Id.* at ¶ 42).

Plaintiff brings four causes of action: (1) breach of contract against all Defendants; (2) a takings claim against NYSERDA, DOE, and the DOE Secretary; (3) a due process

claim against NYSERDA, DOE, and the DOE Secretary; and (4) a request for declaratory judgment against all Defendants. (*Id.* at ¶¶ 51-87).

**DISCUSSION**

Defendants raise a series of arguments supporting dismissal of the complaint. The Court first addresses whether Plaintiff's constitutional claims are ripe for review.

I. **Plaintiff's Constitutional Claims are Not Ripe for Adjudication in this Court**

    A. **Standard of Review**

"Failure of subject matter jurisdiction . . . is not waivable and may be raised at any time by a party or by the court *sua sponte.*" *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) (citing *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction . . . , a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the [c]ourt 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y.

2003) (citation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005). "The court may consider affidavits and other materials beyond the pleadings but cannot 'rely on conclusory or hearsay statements contained in the affidavits.'" *Young v. United States*, No. 12-CV-2342 (ARR)(SG), 2014 WL 1153911, at *6 (E.D.N.Y. Mar. 20, 2014) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)); *see, e.g., Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002) ("[T]he district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

### B.     Plaintiff's Takings Claim is Not Ripe for Adjudication

Plaintiff contends that its constitutional rights have been violated because its property rights were taken without just compensation. (Dkt. 1 at ¶¶ 60-79). Defendants argue that Plaintiff's takings claim is not ripe for adjudication because Plaintiff has not availed itself of the required prerequisites for bringing a Takings Clause claim in this Court. (Dkt. 16-1 at 20-22; Dkt. 25 at 8-13). The Court agrees with Defendants that Plaintiff's takings claim is not ripe for adjudication.

### 1.     Takings Generally

The Fifth Amendment's Takings Clause provides that no private property "shall . . . be taken for public use, without just compensation." U.S. Const. art. V. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). The protection "is designed to bar Government

from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 123 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). "[W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *First English Evangelical Lutheran Church of Glendale v. L.A. Cty., Cal.*, 482 U.S. 304, 321 (1987).

The Supreme Court has recognized two types of takings: physical takings and regulatory takings. *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 324-25 (2002). A physical taking is an appropriation of property by the government for public use. *See id.* at 323. "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Id.* at 322; *see, e.g.*, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) ("[W]hen the physical intrusion reaches the extreme form of a permanent physical occupation, a taking has occurred."). Even a minor permanent physical occupation of private property by the government constitutes a taking. *Loretto*, 458 U.S. at 421.

A regulatory taking, in contrast, occurs when government regulation causes economic injuries so severe that compensation is required. *See Penn Cent.*, 438 U.S. at 123. Although "property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *First Evangelical*, 482 U.S. at 316 (quoting *Penn. Coal*

Co. v. Mahon, 260 U.S. 393, 415 (1922)). "In order to establish a regulatory taking, [a plaintiff is] required to show that the regulation had an economic impact that interfered with 'distinct investment-backed expectations.'" *Cablevision Sys. Corp. v. F.C.C.*, 570 F.3d 83, 98-99 (2d Cir. 2009) (quoting *Penn Cent.*, 438 U.S. at 124). "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Cent.*, 438 U.S. at 124 (internal citation omitted). A plaintiff seeking to show a regulatory taking has a "heavy burden." *Cablevision Sys.*, 570 F.3d at 99.

> Whichever form the alleged taking assumes, to succeed in establishing a constitutional violation claimants must demonstrate: (1) that they have a property interest protected by the Fifth Amendment, (2) that they were deprived of that interest by the government for public use, and (3) that they were not afforded just compensation.

*Ganci v. N.Y.C. Transit Auth.*, 420 F. Supp. 2d 190, 195 (S.D.N.Y. 2005), *aff'd* 163 F. App'x 7 (2d Cir. 2005).

## 2. Ripeness

Plaintiff elucidates two different takings in its motion for a preliminary injunction. (*See* Dkt. 2-11). First, Plaintiff claims that NYSERDA, DOE, and Perry have "destroyed [Plaintiff's] contractual rights [under New York law] to safely access its pipeline and terminate service." (*Id.* at 16). Second, Plaintiff asserts that NYSERDA, DOE, and Perry have effectuated a taking by refusing Plaintiff access to the pipeline, thereby "destroy[ing] [Plaintiff's] right to 'possess, use and dispose of' the pipeline. . . ." (*Id.*).

Plaintiff has not alleged the existence of any law, rule, or regulation which has effectuated a taking. Therefore, Plaintiff's claims are interpreted as physical taking claims. *See Cablevision Sys.*, 570 F.3d at 98-99. Plaintiff seems to concede this fact (*see* Dkt. 34 at 12 n.2), and at oral argument, Plaintiff's counsel agreed that the claims presented in the complaint are for physical takings.

Compensation for a physical taking need not be paid "in advance of or even contemporaneously with the taking." *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 11 (1990). "[A]ll that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." *Williamson Cty.*, 473 U.S. at 194 (internal quotation marks and citation omitted). An inverse condemnation proceeding is the process by which a landowner seeks compensation after a taking has occurred. *See id.* at 196.

"[A] Fifth Amendment claim is premature until it is clear that the Government has both taken property *and* denied just compensation." *Horne v. Dep't of Agric.*, 133 S. Ct. 2053, 2062 (2013) [hereinafter *Horne I*]; *see, e.g., Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014) ("For the claim to be ripe, the plaintiff must 'show that (1) the state regulatory entity has rendered a "final decision" on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure.'" (citation omitted)). In *Williamson County*, the Supreme Court set out a two prong approach to determining whether a takings claim was ripe for adjudication in federal district court. *See id.* at 186, 194. The *Williamson County* ripeness requirement applies to physical

takings claims. *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 509 (2d Cir. 2014); *see, e.g.,* *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995) ("*Williamson* drew no distinction between physical and regulatory takings, and the rationale of that case . . . demonstrates that any such distinction would be unjustified. Thus, regardless of whether [the plaintiff's] claim alleges a physical or regulatory taking, the claim is not yet ripe for review.").

*Williamson County* first requires that the government reach "a final decision regarding . . . the property at issue." *Id.* at 186. The "finality requirement is not mechanically applied." *Sherman*, 752 F.3d at 561. A claimant need not pursue a final decision when doing so would be futile, or where the agency uses unfair or repetitive procedures to prevent the issuance of a final decision. *Id.* "An alleged physical taking is by definition a final decision for the purpose of satisfying [*Williamson County*]'s first requirement." *Kurtz*, 758 F.3d at 513.

Under the second prong:

[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking. Thus, [the Supreme Court has] held that taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act, 28 U.S.C. § 1491. Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

*Williamson Cty.*, 473 U.S. at 194-95 (citations omitted); *see, e.g.*, *Horne I*, 133 S. Ct. at 2062 ("A claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." (quoting *E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998))). "It is well-settled that New York State has a reasonable, certain and adequate provision for obtaining compensation." *Kurtz*, 758 F.3d at 514.

Here, the complaint does not explain whether a taking has already occurred or whether Plaintiff merely worries that a taking is imminent. (*See* Dkt. 1). Indeed, the thrust of Plaintiff's suit seems to ask this Court to force Defendants to complete the taking of Plaintiff's pipeline. Even assuming that Plaintiff could show that a taking has already occurred, thereby satisfying the *Williamson County* finality requirement, it has not pursued a claim under the Tucker Act against the DOE and Perry, nor a claim under state law against NYSERDA. As such, Plaintiff's takings claims are not ripe under *Williamson County.*

Plaintiff asserts that because it seeks only equitable relief, (*see* Dkt. 1 at ¶ 74), *Williamson County*'s ripeness requirement does not apply. (Dkt. 34 at 12-14). However, "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law when a suit for compensation can be brought against the sovereign subsequent to the taking." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984). "Generally, an individual claiming that the United States has taken his

property can seek just compensation under the Tucker Act, 28 U.S.C. § 1491." *Id.* (citing *United States v. Causby*, 328 U.S. 256, 267 (1946)).

Plaintiff argues that "a suit for compensation would not be available in this case to adequately resolve the parties' dispute." (Dkt. 34 at 13). Plaintiff complains of the loss of its property rights over the pipeline, the loss of its contractual rights, and potential liability. (*See* Dkt. 1 at ¶¶ 39-40). The claim for liability presumably flows from Plaintiff's assertion that an uncontrolled shutdown of the pipeline would allow for migration of radioactive waste or an unresolvable leak, and the potential dangers posed by the suspect pipeline.

Plaintiff fails to elucidate how money damages would be inadequate to compensate it for the loss of the pipeline and any potential liability to third parties. These issues can be remedied by after-the-fact damages assessments against Defendants. This is not a case where "delayed resolution of these issues would foreclose *any relief* from the present injury suffered...." *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 82 (1978).[2]

Plaintiff argues that *Eastern Enterprises* allows for equitable relief. (Dkt. 34 at 12). Plaintiff is incorrect for at least two reasons. First, as Plaintiff recognizes, *Eastern Enterprises* is a plurality decision. (*See id.*). "When a fragmented Court decides a case

---

[2]   Plaintiff further claims that monetary relief is unavailable because "the government's intrusion has been continuous and will continue into the future." (Dkt. 34 at 12). The entire physical takings doctrine presupposes continued government intrusion into private property. The "intrusion" here, if one occurred, can be remedied by monetary damages.

and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)). However, "[w]hen it is not possible to discover a single standard that legitimately constitutes the narrowest ground for a decision on that issue, there is then no law of the land because no one standard commands the support of a majority of the Supreme Court." *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir. 2003) (citing *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1058 (3d Cir. 1994)). In *Eastern Enterprises*, the narrowest concurring opinion, Justice Kennedy's, explicitly rejected the plurality's Takings Clause analysis. *See Alcan Aluminum*, 315 F.3d at 189 ("Only four justices voted to strike down the statute as unconstitutional based upon a takings clause analysis. The fifth vote required to reach that result came in a concurrence that specifically rejected the plurality's takings analysis, but found the statute unconstitutional based on a violation of substantive due process." (internal citations omitted)). Because there was no "common denominator" in the plurality and concurring opinions, "the authority of *Eastern Enterprises* is confined to its holding that the Coal Act is unconstitutional as applied to Eastern Enterprises." *Id.* Therefore, Plaintiff's reliance on the plurality opinion in *Eastern Enterprises* is fundamentally misplaced.

Second, even if its takings analysis was controlling, *Eastern Enterprises* is inapplicable.

- 13 -

> [The] longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other, makes it inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa.

*Tahoe Sierra Preservation Council*, 535 U.S. at 323; *see, e.g., Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015) [hereinafter *Horne II*] ("Our cases have stressed the 'longstanding distinction' between government acquisitions of property and regulations." (citation omitted)). *Eastern Enterprises* is a regulatory takings case. *See E. Enters.*, 524 U.S. at 522-23. Thus, *Eastern Enterprises* is inapplicable here, because this is a physical takings case.[3]

Plaintiff also errs in arguing that, pursuant to a footnote in *Duke Power*, the Declaratory Judgment Act allows for equitable relief in this case. (*See* Dkt. 34 at 13). The Supreme Court noted that because the plaintiffs in *Duke Power* were "not seeking compensation for a taking . . . but [were] requesting a declaratory judgment," the dissent's assertion that there was no jurisdiction under 28 U.S.C. § 1331(a) was incorrect. *Duke Power*, 438 U.S. at 71 n.15. According to the majority, the Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained." *Id.* At issue in *Duke Power* was a facial challenge to an act of Congress. *Id.* at 67.

---

[3] For this reason, Plaintiff's attempt to discount Defendants' arguments "that certain cases may be distinguishable on the basis that they involve regulatory, rather than physical takings" as not being supported by caselaw, (*see* Dkt. 34 at 12 n.2), is incorrect.

This case is distinguishable. Plaintiff does not assert any challenge to federal or state law. Instead, it seeks a declaration that a physical taking has occurred, and an injunction against Defendants. Plaintiff fails to cite any analogous situation in which declaratory relief was permitted, and the Court has found none.[4] Additionally, the Supreme Court's language in footnote 15 was not necessary to its holding, and, therefore, constitutes dicta. Pursuant to *Ruckelshaus*—which was decided after *Duke Power*—Plaintiff may bring an action for monetary compensation after-the-fact; equitable relief is not available under the facts alleged here. *See, e.g.*, *Kurtz*, 758 F.3d at 516 n.4 ("The plaintiffs also argue that *Williamson County* does not apply to claims for declaratory and injunctive relief. The cases cited by the plaintiffs, however, do not support this argument. This case is not one in which we need to decide whether a particular state statute facially violates the Fifth Amendment.").

The ripeness requirement is prudential, "not, strictly speaking, jurisdictional." *Horne I*, 133 S. Ct. at 2062; *see, e.g.*, *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 729 (2010) (finding ripeness non-jurisdictional). Therefore, a court "may determine that in some instances, the rule should not apply and [the court] still [has] the power to decide the case." *Sherman*, 752 F.3d at 561; *see, e.g.*, *Lilly Invs. v. City of Rochester*, 674 F. App'x 523 (6th Cir. 2017) ("Both [*Williamson County*]

---

[4]    Even if Plaintiff is correct that recent Supreme Court cases "demonstrate a clear trend towards allowing equitable relief, even when the prongs of *Williamson County* are not met," (*see* Dkt. 34 at 13-14), Plaintiff cites no analogous case to this one. Each of the cases Plaintiff relies on involves either a regulatory taking or a facial challenge to a law. (*See id.*).

- 15 -

hurdles are prudential, not jurisdictional, and this court applies neither mechanistically."). Plaintiff urges the Court to seize on the prudential nature of the ripeness requirement, and ignore *Williamson County*'s dictates. (*See* Dkt. 34 at 11-14). Although the Court is sympathetic to Plaintiff's concern regarding the integrity of the pipeline and that a failure could have significant environmental effects, Plaintiff has failed to establish that this is an extraordinary case in which the potential future injury overwhelms the prudential concerns regarding ripeness. Indeed, Plaintiff fails to cite a factually similar case in which any court has ignored *Williamson County*'s prudential requirements.

In *Sherman*, the plaintiff sought to gain approval from a local zoning board to develop a piece of property. *Id.* at 558. For nearly a decade, the zoning board changed regulations and erected hurdles in a systemic fashion to prevent the plaintiff from developing the land. *Id.* at 557. The Second Circuit, finding that the board had prevented the plaintiff from ever receiving a final decision such that his takings claim might be ripe under *Williamson County*, held that it would be futile for the plaintiff to again seek a final decision. *Id.* at 563 ("Seeking a final decision would be futile because the Town used— and will in all likelihood continue to use—repetitive and unfair procedures, thereby avoiding a final decision.").

Here, Plaintiff has not alleged nor presented any evidence that it sought any final decision of Defendants as to its contractual or property rights. The parties noted at oral argument that they had attempted to find a workable solution to the problem before any suit was filed, but that they failed to reach a final agreement. (*See* Dkt. 41). Plaintiff has

not established that Defendants' actions are "so unreasonable, duplicative, or unjust as to make the conduct farcical," relieving Plaintiff of its duty to seek a final decision under *Williamson County*. *See Sherman*, 752 F.3d at 563.

Therefore, because Plaintiff's takings claim is not ripe for purposes of adjudication before this Court, the claim must be dismissed without prejudice. *See, e.g.*, *Kurtz*, 758 F.3d at 514.

### C.   Plaintiff's Procedural Due Process Claim is Not Ripe for Adjudication

Plaintiff's third cause of action raises a procedural due process claim. (Dkt. 1 at ¶¶ 75-79). The due process claim arises from the same circumstances as Plaintiff's takings claim—*i.e.*, the alleged taking of Plaintiff's "contractual and general property rights to possess, use and dispose its pipeline. . . ." (*Id.* at ¶ 77). "[T]he *Williamson County* ripeness requirement (finality and exhaustion) applies to all procedural due process claims arising from the same circumstances as a taking claim." *Kurtz*, 758 F.3d at 516; *see also Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 96-97 (2d Cir. 1992) (applying *Williamson County*'s final decision requirement, but not the exhaustion requirement, to substantive due process claims arising out of takings). Plaintiff's Takings Clause claim is not ripe under *Williamson County*. Similarly, its due process claim is not ripe. Thus, Plaintiff's due process claim is dismissed without prejudice.

### II.   Plaintiff's Remaining Causes of Action Must Be Dismissed

Defendants move to dismiss Plaintiff's remaining causes of action pursuant to Rule 12(b)(6). (*See* Dkt. 16-1 at 14-24; Dkt. 25 at 19-21).

### A.   Standard of Review

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011).   In considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally may consider only "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).   A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).   To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (citations omitted).

**B.      Plaintiff's Claims against DOE and Perry Must Be Dismissed**

**1.      Breach of Contract**

Plaintiff's first cause of action alleges a breach of contract against all Defendants. (Dkt. 1 at ¶¶ 51-60). Plaintiff asks that the Court "find that the contract of gas supply service between the parties may be terminated," hold that Defendants have breached the contract, and "grant an injunction requiring Defendants to affect a controlled shutdown" of the pipeline. (*Id.* at ¶¶ 58-59).

Under New York law, a breach of contract claim has four elements: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998).

> To recover against the [federal] government for an alleged breach of contract, there must be, in the first place, a binding agreement. To form an agreement binding upon the government, four basic requirements must be met: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract.

*Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003). Here, according to the complaint, West Valley is its "customer." (Dkt. 1 at ¶ 7). Plaintiff does not allege the existence of *any* contract between itself and DOE or Perry. Thus, Plaintiff fails to allege the existence of a contract.

Plaintiff argues that West Valley "was acting on behalf of the Federal Defendants, thereby entering the contract on the Federal Defendants' behalf."[6] (Dkt. 34 at 32). Plaintiff cites no authority for the proposition that a federal contractor can bind the *government* to a contract without the government's express permission to do so. (*See id.*). Further, to recover against a federal defendant for breach of contract, "a government representative having actual authority" must have bound the government to the contract. *See Anderson*, 344 F.3d at 1353. Plaintiff does not allege that any federal government representative did so. West Valley may very well have entered into the contract at the government's request or even direction, but that does not make the government a party to the contract unless a government representative also had the actual authority to bind the government to that contract. Therefore, Plaintiff's breach of contract claim against DOE and Perry is dismissed without prejudice.

## 2.  Declaratory Judgment

As to DOE and Perry, all that remains is Plaintiff's declaratory judgment claim. (*See* Dkt. 1 at ¶¶ 80-87). The Declaratory Judgment Act is only procedural, and does not

---

[6] The Court did not consider Plaintiff's additional factual allegations referenced in its opposition to the motions to dismiss in deciding this issue. (*See* Dkt. 34 at 32). Such information is neither integral to nor relied on in the complaint, and, therefore, is not properly before the Court in deciding the Rule 12(b)(6) motion. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998) (limiting review on a Rule 12(b)(6) motion to "the allegations contained within the four corners of [the plaintiff's] complaint"); *see, e.g., Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000) (finding that a district court errs if, in deciding a Rule 12(b)(6) motion, it "relies on factual allegations contained in legal briefs or memoranda").

change any substantive right. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014). It does not provide an independent cause of action. *In re Joint E. and S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("The Declaratory Judgment Act does not expand jurisdiction. Nor does it provide an independent cause of action. Its operation is procedural only—to provide a form of relief previously unavailable."). As such, Plaintiff cannot maintain a cause of action for a declaratory judgment against DOE and Perry in the absence of any substantive claims. Therefore, Plaintiff's fourth cause of action is dismissed without prejudice as to DOE and Perry.

## III. The Court Declines to Exercise Jurisdiction Over Plaintiff's Remaining Claims

Having dismissed both federal defendants and all federal causes of action, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367. When a district court has "dismissed all claims over which it had original jurisdiction," then "the district court may, at its discretion, exercise supplemental jurisdiction over state law claims . . . [even though] it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court's exercise of this discretion is governed by 28 U.S.C. § 1367:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Under § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1)  the claim raises a novel or complex issue of State law,
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "[T]he discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). After dismissing federal claims, the district court must "reassess its jurisdiction over the case by considering . . . judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004). Therefore, if

> the dismissal of the federal claim occurs "late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary."

*Purgess*, 33 F.3d at 138 (citation omitted).

Here, the Court has dismissed the federal causes of action and the federal defendants. There is not complete diversity between the remaining parties, as Plaintiff and NYSERDA are citizens of New York.[7] (*See* Dkt. 1 at ¶¶ 1, 3). Only state law causes of action remain. Plaintiff's breach of contract claim arises under state law, and the only declaratory relief requested is a declaration of Plaintiff's rights under state law. (*See* Dkt. 1 at ¶ 87); *see also W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 194 (2d Cir. 1987) ("[A] court must look beyond the declaratory judgment allegations and determine whether a substantial federal question arises either from the defendant's threatened action, or from the complaint when viewed as a request for coercive relief apart from the defendant's anticipated suit." (internal citation omitted)); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 862 F. Supp. 995, 1000 (W.D.N.Y. 1994) (finding no federal question jurisdiction where the declaratory judgment claim was premised solely on a state law contractual interpretation issue). Therefore, the Court lacks jurisdiction to hear the case under 28 U.S.C. § 1332.

Judicial economy weighs in favor of dismissing the state law claims. This case is in the very early stages. NYSERDA and West Valley have not yet answered the complaint, and no discovery has occurred. Thus, the parties have not expended substantial time, money, or effort in preparing the state law claims. *See Purgess*, 33 F.3d

---

[7] It is not clear whether West Valley is a citizen of New York. The complaint alleges that West Valley is a Delaware limited liability company (Dkt. 1 at ¶ 6), but its members' citizenship is not identified. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) ("In general, the citizenship of a limited liability company is determined by the citizenship of each of its members.").

at 138 (citation omitted). The Court's refusal to exercise supplementary jurisdiction is not "belated" in any way. *See id.* And, given this Court's significant civil and criminal dockets, the parties may be better served by a state court which can decide the case in a timely and efficient manner. Indeed, Plaintiff initially elected to seek a resolution of these disputes in state court, underscoring the appropriateness of a resolution of these issues by a state court.

Additionally, the principle of comity suggests that this case should be resolved in state court. Plaintiff raises somewhat complex issues of state energy law and regulation. These issues are better addressed by state courts in the first instance.

No factor weighs in favor of supplemental jurisdiction. Therefore, the Court declines to exercise such jurisdiction over Plaintiff's state law and declaratory judgment claims.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Dkt. 16; Dkt. 18; Dkt. 21) are granted.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: August 22, 2017
         Rochester, New York